Case 4:18-cv-03948   Document 1-1   Filed in TXSD on 10/19/18   Page 1 of 39

1/31/2018 4:23 PM
Stan Stanart
County Clerk
Harris County

Harris County - County Civil Court at Law No. 2

CAUSE NO. **1105291**

| | | |
|---|---|---|
| BROOKE NICOLE ADAMS, WESTON WAYNE PIPER | § | IN THE HARRIS COUNTY CIVIL |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | COURT AT LAW NO. _____ |
| | § | |
| | § | |
| FAN CHEN | § | |
| *Defendant.* | § | HARRIS COUNTY, TEXAS |

### PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

**TO THE HONORABLE JUDGE OF THIS COURT:**

Plaintiffs BROOK NICOLE ADAMS and WESTON WAYNE PIPER (collectively, "Plaintiffs") file this their First Original Petition and Request for Disclosure against Defendant FAN CHEN and would respectfully show the following:

### I. DISCOVERY

1.      Pursuant to Rule 190.2 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Level 2.

### II. PARTIES

2.      Plaintiff Brooke Nicole Adams ("Plaintiff Brooke" herein) is an individual residing in Harris County, Houston, Texas.

3.      Plaintiff Weston Wayne Piper ("Plaintiff Weston" herein) is an individual residing in Harris County, Houston, Texas.

4.      Defendant Fan Chen ("Defendant" herein) is an individual residing in Harris County, Houston, Texas and may be personally served with process and this petition at 11200 Westheimer Rd. #120 Houston, Texas 77042, or wherever he may be found.

# EXHIBIT "A"

### III.    JURISDICTION AND VENUE

5.    Venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002, as this cause of action arose in Harris County and Defendant resided in Harris County, Texas at the time the cause of action accrued.

6.    This Court has jurisdiction over Defendant because he is domiciled in the State of Texas, and has committed wrongful acts in the State of Texas as set forth in this petition.

7.    This Court has jurisdiction over the controversy because Plaintiffs are seeking damages within the jurisdictional limits of this Court.

### IV.   FACTS

8.    On February 25, 2017, Plaintiffs began residing at 726 N. Shepherd Drive, Houston, Texas 77007 (the "Leased Premises") pursuant to a twelve-month lease (the "Lease Agreement").

9.    On December 4, 2017, Plaintiff Brooke Adams was prescribed a documented assistance animal by her therapist. This assistance animal was properly registered with the United States Support Animal Registry.

10.    Plaintiffs already had another dog, which they properly listed on the Pet Agreement addendum to the Lease Agreement provided to them by Defendant; and paid a pet deposit for said dog.

11.    Shortly after bringing her assistance animal home, Plaintiffs received a notice from their landlord, Defendant Fan Chen, incorrectly stating that they were in violation of the Lease Agreement by harboring a pet other than the dog listed on the Pet Agreement addendum to the Lease Agreement.

12.      In response, Plaintiffs explained to the Defendant that this new dog was an assistance animal and not to be considered a "pet" under the terms of the Lease Agreement. Although not required under the federal Fair Housing Act, 42 U.S.C. 3601 *et seq.*, Plaintiffs showed Defendant Fan Chen the disability verification letter from Plaintiff Brooke's therapist, and even offered to pay an additional pet deposit for their registered assistance animal.

13.      Rather than make reasonable accommodations as required by the Fair Housing Act, Defendant posted a one-day Notice to Vacate dated December 7, 2017 on the exterior of the main entry door of the Leased Premises. After some discussions with Plaintiffs, Defendant subsequently posted a second one-day Notice to Vacate on December 20, 2017, a mere five days before Christmas, based on the additional animal and a baseless claim that Plaintiff Brooke had used the Leased Premises for "commercial purposes."

14.      Plaintiffs disputed both notices to vacate, including their compliance with Texas Property Code § 24.005, but nevertheless vacated the premises and cleaning the Leased Premises thoroughly pursuant to the Lease Agreement.

15.      Plaintiffs promptly provided Defendant with a forwarding address for the return of their $2,495 deposit security deposit outlined in Section 10(a) of the Lease Agreement.

16.      Defendant has failed to refund Plaintiffs' security deposit within 30 days per Texas Property Code § 92.103 and continuously refuses to return Plaintiffs' security deposit, citing "damage", "improper checkout" and "failure to pay an extra pet deposit" as the reasons for withholding.

17.      In addition to withholding Plaintiff's security deposit of $2,495, Defendant falsely claims that he is entitled to an additional twenty-five dollars ($25) per day plus an additional two hundred and fifty dollars ($250) for "pet rent" for Plaintiff Brooke's documented assistance animal.

18.     According to the federal Fair Housing Act, an "assistance animal" is not considered a "pet" as to be construed under a typical lease agreement, and a landlord is in violation of the act if he or she refuses to provide reasonable accommodations for a tenant with an assistance animal. In addition, a landlord may not request to see anything provided by the tenant's doctor relevant to the tenant's disability, other than a certificate of registration of the assistance animal.

19.     It is a violation of the Fair Housing Act for a landlord to require a tenant to pay any sum of money for the use of an assistance animal in the Leased Premises.

20.     Plaintiff Brooke's second dog is considered a valid assistance animal as defined by the Fair Housing Act.

21.     In addition, Defendant's allegation of Plaintiffs' "commercial" use of the Leased Premises is baseless. First, the Lease Agreement does not explicitly prohibit the use of the Leased Premises for commercial purposes. Second, Defendant's claim of a "commercial" use of the Leased Premises is based on photographs of Plaintiff Brooke that appear on the Internet and social media platforms, in which glimpses of the Leased Premises are seen in the background.

22.     Defendant's grounds for forcing Plaintiffs to vacate the premises were groundless, as are any attempts to withhold Plaintiffs' security deposit.

23.     According to Texas Property Code § 92.103, the landlord shall refund a security deposit to the tenant on or before the 30th day after the date the tenant surrenders the premises.

24.     A landlord may not retain any portion of a security deposit to cover normal wear and tear. Texas Property Code § 92.104(b).

25.     If a landlord in bad faith retains a security deposit in violation of this subchapter, he or she is liable for an amount equal to the sum of one hundred ($100), plus three times the portion of the deposit wrongfully withheld, plus the tenant's reasonable attorney's fees in a suit to recover the deposit. Texas Property Code § 92.109 (a).

26.     A landlord who fails to either return a security deposit or to provide a written description and itemization of deductions on or before the 30th day after the date the tenant surrenders possession is presumed to have acted in bad faith. Texas Property Code § 92.109 (d).

## V. BREACH OF CONTRACT

27.     The allegations in the foregoing paragraphs and all subsequent paragraphs are incorporated herein by reference as if fully set below.

28.     Plaintiffs and Defendant entered into a valid and enforceable contract in the Lease Agreement.  According to this contract, the parties agreed that Plaintiffs would inhabit the Leased Premises located at 726 N. Shepherd Drive, Houston, Texas 77007 for a period of one (1) year beginning on February 25, 2017. In exchange for inhabitation of the Leased Premises for a period of one (1) year, Plaintiffs would pay Defendant two-thousand four-hundred ninety-five dollars ($2,495.00) per month, and provide a security deposit of the same sum. According to the Lease Agreement and the Texas Property Code, Plaintiffs' landlord, Defendant Fan Chen, was obligated to return said deposit upon receipt of Plaintiffs' forwarding address but no later than the thirtieth day after surrender of the premises.

29.     Plaintiffs fully performed their contractual obligation by timely paying rent and then vacating the Leased Premises, despite Defendant's unlawful and groundless Notice to Vacate. Prior to vacating, Plaintiffs thoroughly cleaned the Leased Premises according to the Lease Agreement,

and after vacating, they left the keys and requested the prompt return of their security deposit to a forwarding address.

      30.    Defendant breached the contract by refusing to return Plaintiffs' security deposit despite his failure to point out any material defects in the Leased Premises.

      31.    Defendant's conduct caused injury to Plaintiffs, which resulted in actual and consequential damages within the jurisdictional limits of this Court.

## VI.     RULE 47 DISCLOSURE

      32.    Plaintiffs seek monetary relief of $200,000.00 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees.

## VI. REQUEST FOR DISCLOSURE

      33.    Under Texas Rule of Civil Procedure 194, Plaintiffs request that Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## VII. PRAYER

      34.    For these reasons, Plaintiffs ask that Defendant be cited to appear and answer and, on final trial, that Plaintiffs be awarded a judgment against Defendant for the following:

    a.   Actual damages;

    b.   Exemplary damages and/or three times the portion of the deposit wrongfully withheld;

    c.   Reasonable attorney's fees and expenses;

    d.   Court costs; and

    e.   All other relief to which Plaintiffs are entitled.

Respectfully submitted,

MICHAEL P. FLEMING & ASSOCIATES, P.C.

By: */s/ Nicholas Fleming*
Michael P. Fleming
State Bar No. 07130600
mfleming@flemingattorneys.com
Audrey Manito
State Bar No. 24078815
amanito@flemingattorneys.com
Nicholas Fleming
State Bar No. 24104777
nfleming@flemingattorneys.com
1345 Campbell Road, Ste. 100
Houston, Texas 77055
Tel. 713-221-6800
Fax 712-221-6806

*Attorneys for Plaintiffs*

**CAUSE NO. 1105291**

| | | |
|---|---|---|
| **BROOKE NICOLE ADAMS,** | § | **IN THE HARRIS COUNTY CIVIL** |
| **WESTON WAYNE PIPER** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **COURT AT LAW NO. 2** |
| | § | |
| **FAN CHEN** | § | |
| **Defendant.** | § | **HARRIS COUNTY, TEXAS** |

**DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES,
AND REQUEST FOR DISCLOSURE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, FAN CHEN, Defendant in the above styled and numbered cause, and files this DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND REQUEST FOR DISCLOSURE in response to PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DISCLOSURE (the "Petition") filed by Plaintiffs, BROOKE NICOLE ADAMS and WESTON WAYNE PIPER (collectively "Plaintiffs"), and would respectfully show unto the Court as follows:

**I. AFFIRMATIVE DEFENSES**

1.    Defendant puts forth the affirmative defense that Plaintiffs acted in bad faith to attempt to classify the second dog as a "service animal" only after receiving notice of the lease violation.  Further, there does not appear to be any claim or effort to classify the existing "approved dog" under the lease as a claimed "service animal."

2.    Defendant puts forth the affirmative defense that Plaintiffs failed to provide reasonable documentation regarding approval of the claimed "assistance animal" under Federal Fair Housing Act, 42 U.S.C. 3601 *et seq,* as requested by Defendant.

3.    Defendant puts forth the affirmative defense that Plaintiffs breached the lease regarding, but not limited to, the unauthorized animal; using the leased property for commercial purposes; and, vacating the leased property before the expiration of the lease term.

4.      Defendant puts forth the affirmative defense that no waiver or agreement was reached to allow Plaintiffs to vacate the leased property, without penalty, or release of payment for the remainder of the lease term and all associated amounts due under the lease.

5.      Defendant puts forth the affirmative defense that Defendants are not liable under the Texas Property Code § 92.109(a) and (d) as an accounting was timely provided as outlined in **Exhibit "A"** attached hereto and incorporated by reference.

6.      Defendant puts forth the affirmative defense that he mitigated his damages.

## II.  GENERAL DENIAL

7.      Subject to such stipulations as may hereafter be made, the Defendant asserts a general denial as is authorized by Rule 92 of the Texas Rules of Civil Procedure, and respectfully request that the Plaintiffs be required to prove their claims, charges and allegations by a preponderance of the evidence as is required by the Constitution and laws of the State of Texas.

## III. REQUEST FOR DISCLOSURE

8.      Pursuant to Rule 194, Defendant requests that each Plaintiff, within thirty (30) days of service of this request, provide information or material described in Rule 194.2 of the Texas Rules of Civil Procedure.  The response and all responsive documents should be produced at the law office of The Zak K. Patel Law Firm, PLLC, 4141 Southwest Freeway, Ste. 250, Houston, Texas 77027.

## IV. RULE 190.2(b)(6) REQUEST FOR DISCLOSURE

9.      Pursuant to Rule 190.2(b)(6), request is hereby made to each Plaintiff for all documents, electronic information and tangible items that the disclosing party has in his/her/its possession, custody or control and may use to support its claim and defenses.

## V. ATTORNEY'S FEES

10.     Defendant retained the undersigned attorney to represent him in this matter and in the forcible detainer (along with Paul Bowers), and requests that the Court award to him reasonable and necessary attorney's fees, as authorized by the lease and Chapter 38 of the Texas Civil Practice and Remedies Code in defending both matters, in addition to any other damages that they might incur as a result of this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, FAN CHEN asks that Plaintiffs, BROOKE NICOLE ADAMS and WESTON WAYNE PIPER, jointly and severally, be cited to appear and answer and, on final trial, that Defendant be granted all relief requested in this DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND REQUEST FOR DISCLOSURE and that the Plaintiffs, jointly and severally, be denied their causes of action and take nothing.  Defendant further prays he is awarded his reasonable attorney's fees costs of Court, and post-judgment interest on the same at the highest rate allowed by law. Defendant prays for other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

THE ZAK K. PATEL LAW FIRM, PLLC

By: */s/ Xerxes (Zak) K. Patel*
Xerxes (Zak) K. Patel
Texas Bar No. 24027598
E-mail: zak@patelhammond.com
4141 Southwest Freeway, Ste. 250
Houston, Texas 77027
Tel. (713) 570-6000 x 101
Fax. (281) 941-2563
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on March 16, 2018 a true and correct copy of DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND REQUEST FOR DISCLOSURE was served to each person listed below via fax or through the court's ECF/electronic filing system.

Nicholas Fleming
nfleming@flemingattorneys.com
State Bar No. 24104777
Michael P. Fleming
mfleming@flemingattorneys.com
State Bar No. 07130600
Audrey Manito
amanito@flemingattorneys.com
State Bar No. 24078815
Michael P. Fleming & Associates, P.C.
1345 Campbell Road, Suite 100
Houston, TX 77055
Phone: (713) 221-6800
Fax: (713) 221-6806
ATTORNEYS FOR PLAINTIFFS

*/s/ Xerxes (Zak) K. Patel*
Xerxes (Zak) K. Patel



4141 Southwest Freeway, Ste. 250
Houston, Texas 77027
Telephone: 713-570-6000
Facsimile:  281-941-2563
www.zakpatellaw.com

---

FAX CORRESPONDENCE

DATE:         January 23, 2018

TO:           Weston Wayne Piper

FAX NO:       832-834-5541

TO:           Brooke Nichole Adams

FAX NO:       832-834-5541

TO:           Audrey Manito
              Michael P. Fleming & Associates, P.C.
              Counsel for Brooke Nichole Adams & Weston Wayne Piper

FAX NO:       713-221-6806

FROM:         Xerxes (Zak) K. Patel

REGARDS:      **Notice, accounting, and Ten (10) day demand regarding security deposit and
              remaining outstanding balance for 726 N. Shepherd Dr., Houston, TX 77077.**

PAGES:        _6_ including this cover page

# EXHIBIT "A"

CONFIDENTIALITY NOTICE: The documents accompanying this telecopy transmission contains confidential information which is legally privileged. The information is intended only for the use of the recipient named above. If you have received this telecopy in error, please notify us immediately by telephone to arrange for return of the documents to us. You are hereby notified that any disclosure, copying, distribution or taking any action in reliance on the contents of this telecopy is strictly prohibited.  The Zak K. Patel Law Firm PLLC, 4141 Southwest Freeway, Ste. 250, Houston, TX 77027, 713-570-6000.



Xerxes (Zak) K. Patel
4141 Southwest Freeway, Ste. 250
Houston, Texas 77027
Telephone: (713) 570-6000 x 101
Facsimile:  (281) 941-2563
zak@zakpatellaw.com

Board Certified Commercial Real Estate Law
Texas Board of Legal Specialization

January 23, 2018

Brooke Nichole Adams                    *Certified Mail Return Receipt Requested*
13504 Hempstead Rd., Suite A            *CMRRR # 7017 1000 0000 6939 5761*
Houston, TX 77040                       *Regular First-Class U.S. Mail &*
                                        *Email: brookewsadams@gmail.com*

Weston Wayne Piper                      *Certified Mail Return Receipt Requested*
13504 Hempstead Rd., Suite A            *CMRRR # 7017 1000 0000 6939 5754*
Houston, TX 77040                       *Fax: 832-834-5541 &*
                                        *Email: west@piperdevelopments.com*

**Re:    Notice, accounting, and Ten (10) day demand regarding security deposit and remaining
         outstanding balance for 726 N. Shepherd Dr., Houston, TX 77077.**

Dear Ms. Adams and Mr. Piper,

Let this letter serve as notice that Fan Chen, the landlord for the leased property located at 726
N. Shepherd Dr., Houston, TX 77077 (the "Property") has retained The Zak K. Patel Law Firm, PLLC
regarding matters related to the claimed breaches of the Texas Association of Realtors Residential
Lease between Mr. Chen and you, executed February 15, 2017 (the "Lease").  References to the Lease
is inclusive of any addendums including the Pet Agreement, executed February 15, 2017.  Please direct
all further correspondence regarding the Property, Lease or other matters concerning this demand only
to this office at the contact information provided above.

Mr. Chen, and his property manager, Rutkun Tao (collectively referred to herein as the
"Landlord"), claim various defaults and breaches of the Lease including, but not limited to,
maintaining an unauthorized pet in the Property, without prior notice to Landlord or Landlord's
consent; surrender of the Property prior to the lease term expiring; failing to provide access to the
Property for HVAC work to be conducted; failing to maintain utilities on the Property; and, use of the
Property for commercial purposes.

Although the term of the Lease was through February 28, 2018, you collectively (also jointly
referred to herein as the "Tenant") surrendered the Property on or about December 31, 2017.  Such
abandonment and other defaults have caused Mr. Chen actual damages.  As a general background for
the dispute and accounting against the Lease's (initial) security deposit of $2,495.00 the non-
exhaustive claim is provided below.

The Pet Agreement provided for the approved one (1) dog, a 10 lbs Brussels griffon.  In
consideration of the dog, a deposit of $500.00 was provided by Tenant.[1]  Thus the total amount of the

---

[1] Of the $500.00 pet deposit, $250.00 was refundable (per the terms of the Lease) and $250.00 was non-refundable.

*Letter to Tenants RE: Security Deposit Accounting and 10 Day Demand related to 726 N. Shepherd Dr., Houston, TX*
*1-23-18      Page 2*

security deposit (which could possibly be refunded under the terms of the Lease) is Two Thousand Seven Hundred Forty-five and 00/100 Dollars ($2,745.00) (the "Security Deposit").

Section 9A. of the Lease outlined that any additional pets brought into the Property must be agreed to between Landlord and Tenant (collectively referred to herein as the "Parties").[2]  Section 9B. of the Lease outlined the steps Landlord make take regarding a claimed breach of the provision including finding the Tenant in default of the Lease and pursuing remedies outlined in Section 27 of the Lease; or, charge Tenant, as additional rent, the amount of $250.00 and $25.00 per day thereafter per pet for each day Tenant violates the pet restrictions.  Per information available to Landlord[3], on or about December 4, 2017, Tenant acquired an additional French bulldog puppy ("Waffles" as referenced by Ms. Adams) and began maintaining it at the Property.  No prior notice was provided to Landlord, nor consent sought by Tenant.

On December 5, 2017, Landlord discovered the new puppy was being maintained at the Property.  That day, Landlord proved notice that Per Section 9 of the Lease, maintaining the puppy was a violation of Section 9 of the Lease, and payment under the Lease was due for the claimed violation. On information and belief, Tenant maintained the additional puppy on the Property for twenty-seven (27) days.[4] To date, no payment has been provided to Landlord for the claimed violation.

Tenant has claimed the additional puppy is a "companion dog" for Ms. Adams; however, such claim and alleged documentation in support thereof were provided only after Landlord's notice of breach of the Lease was provided, and Ms. Adams first claiming the additional puppy to be a "birthday gift."   Further, although requested, Tenant failed to provide information regarding the alleged prescribing/overseeing doctor's qualifications and approval for the December 7, 2017 emotional support animal ("ESA") letter issued by Crystal Janke, a family nurse practitioner and co-owner of RxBodyFx, Medical Weight Loss and Preventative Care, claiming the additional puppy was prescribed as a "companion dog."[5]  To date, such information has still yet to be provided.[6]

Although notices to Tenant were provided for two (2) days prior about scheduled HVAC service the Property, on December 6, 2017, Tenant denied access to Landlord's scheduled HVAC technician after Ms. Adams has previously agreed to be in the Property, and provide access.  The HVAC company emailed Landlord that Ms. Adams would not let technician in; however, no reason was provided as to why access was not permitted. Landlord had to reschedule the HVAC company for

---

[2] Unless the parties agree otherwise in writing. Tenant may not permit, even temporarily, any pet on the property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

[3] See Brooke Adams' 12/5/17 text message to Landlord, and 12/4/17 Facebook and Instagram posts claiming that a new puppy was a "birthday gift."

[4] December 4, 2017 to December 31, 2017.

[5] On December 12, 2017, Audrey Manito, Tenant's counsel, provided nurse practitioner, Crystal Janke's, claimed ESA letter (for the first time). The claimed ESA letter arguably fails to confirm Ms. Adams' claimed disability meets the ADA definition.  Further, the claimed ESA letter did not provide the date and type of Ms. Janke's license and State in which it was supposedly issued.  Further, research on Ms. Janke's online biography does not outlined her experience and qualification to treat mental health, nor does RxBdyFx's website reference any mental health treatment. Further, the ESA letter is dated December 7, 2017 (three (3) days after the unauthorized puppy began living in the Property).  Finally, it is alleged that on January 13, 2018, in an attempt to provide support for the subsequent claim the additional puppy was prescribed, and in preparation for an eviction trial, Ms. Adams posted on her Facebook that her "doctor recommended a dog."

[6] Landlord's last request, through his counsel, was January 16, 2018.

another week.  The failure to allow access to the Property was a violation of Section 14 of the Lease, for which Tenant is responsible for a $50.00 charge.[7]

Due to Tenant's claimed violations of the Lease, for which Tenant acknowledged[8], and as permissible under Section 27 of the Lease, on December 6, 2017, Landlord engaged attorney Paul Powers to proceed forward with enforcement of the Lease and a Notice to Vacate.  Mr. Powers undertook certain efforts regarding the Notice to Vacate; eventual eviction proceedings; extensive research regarding Tenant's activities and claims; and, discussions with Landlord, Tenant and/or Tenant's counsel regarding the claimed violations under the Lease and Tenant's responses/counterclaims related thereto.  Landlord has incurred certain fees with Mr. Powers (and this Firm) as a result of pursuit of the claimed breach of Lease for which are recoverable against Tenant.[9]

Tenant indicated they were vacating the Property on December 31, 2018 and left the keys in the Property (minus one (1) mail box key previously issued).  Such actions were considered a surrender of the Property.[10]  Despite, surrendering the Property, that did not release Tenant from liability under the Lease, as there was no agreement between the Parties regarding the same.[11]

Landlord also claims Tenant violated the Lease, and underlying deed restrictions for the Property, because on or about December 14, 2017 it was discovered and appeared Ms. Adams had been using the Property for unauthorized and extensive commercial activities, for profit.  In support of such claims, evidence has been obtained showing Ms. Adams engaged Bob Mulrenin, Gordon Lam, Brain Williams and/or Nathan Rodriguez, professional photographers and/or artists, to take commercial photos throughout the Property to sell a variety of items.  Multiple photographs were posted on the professional photographers' and/or artists' social media accounts, along with postings on Ms. Adams' online eBay store page, Facebook, Instagram, and Twitter.  Ms. Adams also modeled, marketed and promoted a clothing brand named "VelvetDoll" (including the sale of Ms. Adams' "previously worn" lingerie), and healthcare products by "IDLife" out of the Property.  Further, Ms. Adams and Kyle Jones (the presidential director at IDLife Corporate, per his own Facebook information), recorded multiple talk shows (also possibly with TLC) and marketed and promoted healthcare products by "IDLife," and other products from Lucky 13, out of the Property.

After receiving notice that Tenant intended on vacating the Property prior to the expiration of the Lease term, Landlord provided written notice to Tenant that Tenant should maintain utilities at the Property (especially due to the severe cold Houston was set to experience) to avoid damage to the Property.  Despite such notice, Tenant cut of utilities to the Property.  Such action was a violation of the Lease.[12]  As a result of the breach, and as necessary to relet the Property, Landlord set up electricity service with Champion Energy on January 4, 2018.

---

[7] Section 14C. of the Lease: Trip Charges:  If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are later denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge of $50.00.

[8] See Ms. Adams' voicemail to Ms. Tao on December 5, 2017 whereby she stated, "*I understand there is a violation.*"

[9] See Sections 29; 27B.(4)(d)-(f); and, Section 10D.(1)(c)-(f) & (n)-(p) of the Lease.

[10] See Section 16B.(2) of the Lease: Surrender of Premises regarding vacating and turning over the keys.

[11] See Sections 28: Early Termination, and 33C.: Joint and Several liability, of the Lease.

[12] Section 11B. of the Lease. "Utilities: Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services."

*Letter to Tenants RE: Security Deposit Accounting and 10 Day Demand related to 726 N. Shepherd Dr., Houston, TX*
*1-23-18     Page 4*

On January 1, 2018, in order to mitigate his damages by Tenant moving out on December 31st including, but not limited to, limit lost rents, Landlord contacted his rental agent, Drew Pursell, to list the Property on market as soon as possible. The rental amount was listed at $2,495.00, which is below the current market. On January 4, 2018, the rental listing went active on market, and showings were scheduled to potential tenants and their agents. The Property has been leased. On or about January 11, 2018, Landlord incurred and since paid a reletting fee of Two Thousand Five Hundred and 00/100 Dollars ($2,500.00) to rental listing agent. On January 19, 2018 the new tenants began renting the Property.

On January 10, 2018, the Parties appeared at court for the forcible detainer trial. While the trial was reset for January 17, 2018, the Parties discussed their claims, and although demand was again made for Tenant to cure the alleged defaults under the Lease, including payment for violations under the Lease, Tenant has failed to do so. On January 17, 2018, the Justice Court dismissed Landlord's lawsuit finding Tenant had vacated the Property on December 31, 2017 and instructed Landlord to pursue any other claimed breaches under the Lease in a separate lawsuit. Unless payment is made as outlined herein; Landlord intends to proceed forward with such suit at the first available opportunity.

Landlord's accounting[13] for the amounts currently due by Tenant under the Lease, and taken as a deduction against the Security Deposit[14] is as follows[15]:

1. $900.00      Unauthorized pet charge ($250.00 1st day & $25.00 per day thereafter);
2. $50.00        Landlord trip charge - tenants denied access by HVAC technician;
3. $1,447.00   Unpaid/lost rent/vacancy 1/1/2018-1/18/2018 ($2,495.00 - Jan. prorated rent $1,048.00).
4. $2,500.00   Reletting fee by John Daugherty agent Drew Pursell;
5. $62.00        Landlord's utilities' bill from 1/4/2018 to 1/19/2018 as Tenants cut off on 1/3/2018;
6. $90.00        Third-party services for eviction delivery fees, and mail postage;
7. $394.00      Eviction court filing and service fees for two eviction filings;
8. $8,721.03    Legal fees: Paul Bowers; and,
9. $2,457.33    Legal fees: The Zak K. Patel Law Firm, PLLC (amount thus far).

---

[13] Per Section 10 of the Lease, Landlord has Thirty (30) days after written notice of surrender before being obligated to account for or refund the Security Deposit. As required by the Lease and directed by Tenant's 12/31/17 email outlining the forwarding address, this initial correspondence must be sent directly to the Tenant as this office is unaware of an agreement that such notice should only be provided to Tenant's counsel.

[14] Section 10D.(1) of the Lease: Deductions: Landlord may deduct reasonable charges from the security deposit for:
(c) unpaid or accelerated rent;
(d) unpaid late charges;
(e) unpaid utilities;
(f) unpaid pet charges;
(g) replacing unreturned keys, garage door openers, security devices, or other components;
(m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;
(n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
(o)  mailing costs associated with sending notices to Tenant for any violations of this lease; and
(p)  any other unpaid charges or fees or other items for which Tenant is responsible under this lease.

[15] Section 8 of the Lease: "Landlord may apply funds received from Tenant first to any non-rent obligations of tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent."

*Letter to Tenants RE: Security Deposit Accounting and 10 Day Demand related to 726 N. Shepherd Dr., Houston, TX*
*1-23-18      Page 5*

| | |
|---|---|
| Total claimed damages (to date) | $16,621.36 |
| Security Deposit deduction | ($2,745.00) |
| **Amount due from Tenants** | **$13,876.36** |

Pursuant to Section 10D.(2) of the Lease, notice is provided that after all just offsets and credits, **Thirteen Thousand Eight Hundred Seventy-six and 36/100 Dollars ($13,876.36)** in excess of the Security Deposit is to be provided to this office at 4141 Southwest Freeway, Ste. 250, Houston, Texas 77027, by certified funds, made out to "Fan Chen" **within ten (10) days** after this written demand.

This is a letter from a debt collector.  Any information will be used for that purpose.

I am hopeful that this matter can be resolved without the need for costly litigation for both Parties.  Please contact my office with any questions.

Sincerely,

THE ZAK K. PATEL LAW FIRM, PLLC

Xerxes (Zak) K. Patel

cc:  Fan Chen                                    *Via Email*

Audrey Manito                              *Via Fax: 713-221-6806 &*
Michael P. Fleming & Associates, P.C.      *Email: amanito@flemingattorneys.com*
1345 Campbell Road, Suite 100
Houston, TX 77055

CAUSE NO. 1105291

| | | |
|---|---|---|
| BROOKE NICOLE ADAMS, | § | IN THE HARRIS COUNTY CIVIL |
| WESTON WAYNE PIPER | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | COURT AT LAW NO. 2 |
| | § | |
| FAN CHEN | § | |
| Defendant. | § | HARRIS COUNTY, TEXAS |

**DEFENDANT/COUNTER-PLAINTIFF FAN CHEN'S FIRST COUNTERCLAIM, AND REQUEST FOR ADMISSIONS**

COMES NOW Defendant /Counter-Plaintiff FAN CHEN, and files his First Counterclaim and Request For Admissions. In support thereof, Defendant/Counter-Plaintiff states as follows:

### I. DISCOVERY CONTROL LEVEL

1. Defendant/Counter-Plaintiff affirms that the maximum damages sought by Plaintiffs/Counter-Defendants, excluding interest, costs and attorney fees, is less than $200,000.00. Defendant/Counter-Plaintiff elects Discovery Plan "Level Two" pursuant to Section 190.2 of the Texas Rules of Civil Procedure.

### II. CLAIM FOR RELIEF

2. Defendant/Counter-Plaintiff counterclaim seeks monetary relief as follows pursuant to TRCP 47: Less than $200,000.00 including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees.

### III. PARTIES

3. Plaintiff/Counter-Defendant BROOKE NICOLE ADAMS is an individual and has already made and appearance in this case. Additional personal service is not necessary other than through her attorney of record, Audrey Manito.

*Defendant/Counter-Plaintiff's First Counterclaim Page 1*

4.     Plaintiff/Counter-Defendant WESTON WAYNE PIPER is an individual and has already made and appearance in this case.  Additional personal service is not necessary other than through his attorney of record, Audrey Manito.

5.     Defendant/Counter-Plaintiff FAN CHEN is an individual whose principal address is located in Houston, Harris County, TX.

## IV. JURISDICTION

6.     The amount in controversy is within the jurisdictional limits of this Court, and venue in Harris County is proper pursuant to section 15.002 of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas.  Further, Defendant/Counter-Plaintiff's cause of action is based upon a contract executed and to be performed in Harris County, Texas.

## V. FACTS

7.     Defendant/Counter-Plaintiff and Plaintiffs/Counter-Defendants entered into a Texas Association of Realtors Residential Lease, executed February 15, 2017, including addendums (collectively the "Lease"), regarding the leased property located at 726 N. Shepherd Dr., Houston, TX 77077 (the "Property").

8.     Plaintiffs/Counter-Defendants breached the Lease including, but not limited to, by maintaining an additional animal at the Property, without consent of Defendant/Counter-Plaintiff; surrender of the Property prior to the lease term expiring; failing to provide access to the Property for HVAC work to be conducted; failing to maintain utilities on the Property; and, use of the Property for commercial purposes.  Defendant/Counter-Plaintiff incurred legal fees in pursuit of a forcible detainer against Plaintiffs/Counter-Defendants for possession of the Property and associated breaches.  Further, Defendant/Counter-Plaintiff incurred reletting fees to have the

*Defendant/Counter-Plaintiff's First Counterclaim Page 2*

Property relet after Plaintiffs/Counter-Defendants vacated the Property prior to the expiration of the lease term. Further detail regarding the claimed breaches and damages are outlined in the January 23, 2018 demand letter attached hereto as **Exhibit "A"** and incorporated herein, as if written verbatim.

9.     Defendant/Counter-Plaintiff claimed damages against Plaintiffs/Counter-Defendants, jointly and severally, in the amount of at least Thirteen Thousand Eight Hundred Seventy-six and 36/100 Dollars ($13,876.36) after all just and lawful offsets, payments, and credits have been allowed.

10.    Defendant/Counter-Plaintiff had made demand and previously attempted to resolve this matter without the need for legal services; however, the outstanding balance remains unpaid. Plaintiffs/Counter-Defendants has not refuted the claimed outstanding balance after demand was made.

11.    *Debt.*  Plaintiffs/Counter-Defendants has defaulted by multiple breaches of the Lease and failing to make payment after demand was made.  The balance due Defendant/Counter-Plaintiff per the Lease is at least $13,876.36 after all just and lawful offsets, payments, and credits have been allowed.

12.    *Conditions Precedent.*  Defendant/Counter-Plaintiff is the owner and holder of the right to sue.  All conditions precedent have been performed or have occurred regarding Defendant/Counter-Plaintiff's cause of action.

## VI. CAUSES OF ACTION

13.    Defendants/Counter-Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

14.    *Breach of Written Contract* - Defendant/Counter-Plaintiff pursues Plaintiffs/

Counter-Defendants, jointly and severally, under a claim of Breach of Written Contract.

15.      *Facts.* Defendant/Counter-Plaintiff and Plaintiffs/Counter-Defendants entered into the Lease. Defendant/Counter-Plaintiff has fully complied with the Lease. Plaintiffs/Counter-Defendants breached and have failed to comply with the Lease. Defendant/Counter-Plaintiff has been damaged as a result of Plaintiffs/Counter-Defendants' breach of the Lease as outlined in Exhibit "A."

16.      *Default.* Plaintiffs/Counter-Defendants breached the Lease including, but not limited to, by maintaining an additional animal at the Property, without consent of Defendant/Counter-Plaintiff; surrender of the Property prior to the lease term expiring; failing to provide access to the Property for HVAC work to be conducted; failing to maintain utilities on the Property; and, use of the Property for commercial purposes. Defendant/Counter-Plaintiff incurred legal fees in pursuit of a forcible detainer against Plaintiffs/Counter-Defendants for possession of the Property and associated breaches. The balance due Defendant/Counter-Plaintiff per the Lease is at least $13,876.36 after all just and lawful offsets, payments, and credits have been allowed, plus accrued pre-judgment interest at the rate of 5% per month.

17.      *Conditions Precedent.* All conditions precedent have been performed or have occurred.

### VII. ATTORNEYS' FEES

18.      Defendants/Counter-Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

19.      Plaintiffs/Counter-Defendants' default has made it necessary for Defendant/Counter-Plaintiff to employ the undersigned attorney to file suit along with prior counsel, Paul Bowers. Reasonable fees for the attorney's services rendered and to be rendered are

at least $11,500.00 at the time of filing, for which such amount shall continue to rise throughout litigation.   Defendant/Counter-Plaintiff is entitled to recover its reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code 38 and the terms of the Lease.

## VIII. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

20.     Defendants/Counter-Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

21.     Defendant/Counter-Plaintiff seeks recovery of prejudgment and post-judgment interest on the outstanding balance, at the rate of Five Percent (5%).

22.     Defendant/Counter-Plaintiff seeks recovery of post-judgment interest at the maximum rate permitted by law.

## VIII. REQUEST FOR ADMISSION

23.     Pursuant to Rule 198 of the Texas Rules of Civil Procedure, Defendant/Counter-Plaintiff requests the named Plaintiffs/Counter-Defendants herein make the following admission of facts for the purposes of this action only. The responses to the Request for Admissions shall be made on or before the expiration of thirty (30) days from receipt.

## REQUEST FOR ADMISSIONS TO PLAINTIFF/COUNTER-DEFENDANT BROOKE NICHOLE ADAMS

NO. 1: Please admit or deny the outstanding amounts referenced in Exhibit "A" attached to this Counterclaim represent the correct amounts due by Plaintiffs/Counter-Defendants to Defendant/Counter-Plaintiff under the Texas Association of Realtors Residential lease between Defendant/Counter-Plaintiff and Plaintiffs/Counter-Defendants, executed February 15, 2017 (the "Lease") regarding the real property made subject of this lawsuit being commonly known as 726 N. Shepherd Dr., Houston, TX 77077 (the "Property").
**RESPONSE:**

NO. 2: Please admit or deny the Lease between Plaintiffs/Counter-Defendants and Defendant/Counter-Plaintiff referenced in Exhibit "A" to this Counterclaim was executed for valuable consideration.
**RESPONSE:**

NO. 3: Please admit or deny that Plaintiffs/Counter-Defendants have breached the Lease.

**RESPONSE:**

NO. 4: Please admit or deny that Defendant/Counter-Plaintiff has suffered actual damages in the amount of at least $13,876.36, proximately caused by Plaintiffs/Counter-Defendants' breach of the Lease.

**RESPONSE:**

NO. 5: Please admit or deny that Defendant/Counter-Plaintiff has performed all conditions precedent to filing this counterclaim in this lawsuit.

**RESPONSE:**

NO. 6: Please admit or deny that BROOKE NICHOLE ADAMS is the correct legal name of the Plaintiff/Counter-Defendant who entered into the Lease.

**RESPONSE:**

NO. 7: Please admit or deny that WESTON WAYNE PIPER is the correct legal name of the Plaintiff/Counter-Defendant who entered into the Lease.

**RESPONSE:**

NO. 8: Please admit or deny that one or more Plaintiff/Counter-Defendant was conducting a commercial business out of the Property in violation of the terms of the Lease.

**RESPONSE:**

NO. 9: Please admit or deny that reasonable and customary attorney fees for Defendant/Counter-Plaintiff's attorney in pursuit of this lawsuit and the forcible detainer action(s) is at least $11,500.00.

**RESPONSE:**

NO. 10: Please admit or deny that one or more Plaintiff/Counter-Defendant maintained an unapproved animal in the Property in violation of the terms of the Lease.

**RESPONSE:**

NO. 11: Please admit or deny that WESTON WAYNE PIPER registered the dog named "Waffles," who was maintained at the Property, as a claimed support animal with Register My Service Animal, LLC.

**RESPONSE:**

*Defendant/Counter-Plaintiff's First Counterclaim Page 6*

NO. 12: Please admit or deny that BROOKE NICHOLE ADAMS registered the dog named "Waffles," who was maintained at the Property, as a claimed support animal with Register My Service Animal, LLC.

**RESPONSE:**

NO. 13: Please admit or deny that prior to obtaining the dog named "Waffles," who was maintained at the Property, Plaintiffs/Counter-Defendants did not provide notice to Defendant/Counter-Plaintiff that a claimed service animal was being sought.

**RESPONSE:**

NO. 14: Please admit or deny that Plaintiffs/Counter-Defendants did not seek to have the dog named "Waffles," registered as a claimed service animal with Register My Service Animal, LLC until after notice was received from Defendant/Counter-Plaintiff and/or his representative as to a claimed violation of the Lease, and Pet Agreement addendum thereto, for maintaining an additional animal at the Property.

**RESPONSE:**

NO. 15: Please admit or deny that BROOKE NICHOLE ADAMS did not seek to have the approved dog listed in the Lease registered as a claimed "service animal" (the dog "Waffles" claimed to have been) as at any time.

**RESPONSE:**

NO. 16: Please admit or deny that BROOKE NICHOLE ADAMS did not seek to have the approved dog listed in the Lease registered as a claimed "service animal" (a the dog "Waffles" claimed to have been) as at any time.

**RESPONSE:**

NO. 17: Please admit or deny that BROOKE NICHOLE ADAMS did not seek any medical diagnosis from nurse practitioner, Mrs. Crystal Janke, related to the approval of the dog "Waffles" as a claimed "service animal," until after December 4, 2017.

**RESPONSE:**

NO. 18: Please admit or deny that BROOKE NICHOLE ADAMS did not seek any medical diagnosis from nurse practitioner, Mrs. Crystal Janke, related to the approval of the dog "Waffles" as a claimed "service animal," prior to December 4, 2017.

**RESPONSE:**

NO. 19: Please admit or deny that BROOKE NICHOLE ADAMS did not seek any medical diagnosis from nurse practitioner, Mrs. Crystal Janke, related to the approval of any dog as a claimed "service animal," until after December 4, 2017.

**RESPONSE:**

NO. 20: Please admit or deny that BROOKE NICHOLE ADAMS did not seek any medical diagnosis from nurse practitioner, Mrs. Crystal Janke, related to the approval of any dog as a claimed "service animal," prior to December 4, 2017.

**RESPONSE:**

**PRAYER**

Defendant/Counter-Plaintiff requests that Plaintiffs/Counter-Defendants, jointly and severally, be cited to appear and file answer; that upon final hearing, Defendant/Counter-Plaintiff have judgment against Plaintiffs/Counter-Defendants for his claimed damages of at least $25,376.36; pre-judgment interest and post judgment interest at the maximum rate permitted by law; attorney fees; and, costs; and that Defendant/Counter-Plaintiff have such other and further relief to which he may show himself justly entitled.

Respectfully submitted,

By:  */s/ Xerxes (Zak) K. Patel*
Xerxes (Zak) K. Patel
Texas Bar No. 24027598
The Zak K. Patel Law Firm, PLLC
4141 Southwest Freeway, Ste. 250
Houston, Texas 77027
Tel. (713) 570-6000 x 101
Fax. (281) 941-2563
Email: zak@zakpatellaw.com
Attorney for Defendant/Counter-Plaintiff

## CERTIFICATE OF SERVICE

I certify that on April 9, 2018 a true and correct copy of DEFENDANT/COUNTER-PLAINTIFF FAN CHEN's FIRST COUNTERCLAIM AND REQUEST FOR ADMISSIONS was served to each person listed below via fax or through the court's ECF/electronic filing system.

Nicholas Fleming
nfleming@flemingattorneys.com
State Bar No. 24104777
Michael P. Fleming
mfleming@flemingattorneys.com
State Bar No. 07130600
Audrey Manito
amanito@flemingattorneys.com
State Bar No. 24078815
Michael P. Fleming & Associates, P.C.
1345 Campbell Road, Suite 100
Houston, TX 77055
Phone: (713) 221-6800
Fax: (713) 221-6806
ATTORNEYS FOR PLAINTIFFS

*/s/ Xerxes (Zak) K. Patel*
Xerxes (Zak) K. Patel



4141 Southwest Freeway, Ste. 250
Houston, Texas 77027
Telephone: 713-570-6000
Facsimile:  281-941-2563
www.zakpatellaw.com

---

## FAX CORRESPONDENCE

DATE:        January 23, 2018

TO:           Weston Wayne Piper

FAX NO:    832-834-5541

TO:           Brooke Nichole Adams

FAX NO:    832-834-5541

TO:           Audrey Manito
                 Michael P. Fleming & Associates, P.C.
                 Counsel for Brooke Nichole Adams & Weston Wayne Piper

FAX NO:    713-221-6806

FROM:      Xerxes (Zak) K. Patel

REGARDS:  **Notice, accounting, and Ten (10) day demand regarding security deposit and remaining outstanding balance for 726 N. Shepherd Dr., Houston, TX 77077.**

PAGES:      _6_ including this cover page

# EXHIBIT "A"

CONFIDENTIALITY NOTICE: The documents accompanying this telecopy transmission contains confidential information which is legally privileged. The information is intended only for the use of the recipient named above. If you have received this telecopy in error, please notify us immediately by telephone to arrange for return of the documents to us. You are hereby notified that any disclosure, copying, distribution or taking any action in reliance on the contents of this telecopy is strictly prohibited.  The Zak K. Patel Law Firm PLLC, 4141 Southwest Freeway, Ste. 250, Houston, TX 77027, 713-570-6000.



Xerxes (Zak) K. Patel
4141 Southwest Freeway, Ste. 250
Houston, Texas 77027
Telephone: (713) 570-6000 x 101
Facsimile: (281) 941-2563
zak@zakpatellaw.com

Board Certified Commercial Real Estate Law
Texas Board of Legal Specialization

January 23, 2018

Brooke Nichole Adams                    *Certified Mail Return Receipt Requested*
13504 Hempstead Rd., Suite A            *CMRRR # 7017 1000 0000 6939 5761*
Houston, TX 77040                       *Regular First-Class U.S. Mail &*
                                        *Email: brookewsadams@gmail.com*

Weston Wayne Piper                      *Certified Mail Return Receipt Requested*
13504 Hempstead Rd., Suite A            *CMRRR # 7017 1000 0000 6939 5754*
Houston, TX 77040                       *Fax: 832-834-5541 &*
                                        *Email: west@piperdevelopments.com*

**Re:    Notice, accounting, and Ten (10) day demand regarding security deposit and remaining outstanding balance for 726 N. Shepherd Dr., Houston, TX 77077.**

Dear Ms. Adams and Mr. Piper,

Let this letter serve as notice that Fan Chen, the landlord for the leased property located at 726 N. Shepherd Dr., Houston, TX 77077 (the "Property") has retained The Zak K. Patel Law Firm, PLLC regarding matters related to the claimed breaches of the Texas Association of Realtors Residential Lease between Mr. Chen and you, executed February 15, 2017 (the "Lease"). References to the Lease is inclusive of any addendums including the Pet Agreement, executed February 15, 2017. Please direct all further correspondence regarding the Property, Lease or other matters concerning this demand only to this office at the contact information provided above.

Mr. Chen, and his property manager, Rutkun Tao (collectively referred to herein as the "Landlord"), claim various defaults and breaches of the Lease including, but not limited to, maintaining an unauthorized pet in the Property, without prior notice to Landlord or Landlord's consent; surrender of the Property prior to the lease term expiring; failing to provide access to the Property for HVAC work to be conducted; failing to maintain utilities on the Property; and, use of the Property for commercial purposes.

Although the term of the Lease was through February 28, 2018, you collectively (also jointly referred to herein as the "Tenant") surrendered the Property on or about December 31, 2017. Such abandonment and other defaults have caused Mr. Chen actual damages. As a general background for the dispute and accounting against the Lease's (initial) security deposit of $2,495.00 the non-exhaustive claim is provided below.

The Pet Agreement provided for the approved one (1) dog, a 10 lbs Brussels griffon. In consideration of the dog, a deposit of $500.00 was provided by Tenant.[1] Thus the total amount of the

---

[1] Of the $500.00 pet deposit, $250.00 was refundable (per the terms of the Lease) and $250.00 was non-refundable.

*Letter to Tenants RE: Security Deposit Accounting and 10 Day Demand related to 726 N. Shepherd Dr., Houston, TX*
*1-23-18     Page 2*

security deposit (which could possibly be refunded under the terms of the Lease) is Two Thousand Seven Hundred Forty-five and 00/100 Dollars ($2,745.00) (the "Security Deposit").

Section 9A. of the Lease outlined that any additional pets brought into the Property must be agreed to between Landlord and Tenant (collectively referred to herein as the "Parties").[2]  Section 9B. of the Lease outlined the steps Landlord make take regarding a claimed breach of the provision including finding the Tenant in default of the Lease and pursuing remedies outlined in Section 27 of the Lease; or, charge Tenant, as additional rent, the amount of $250.00 and $25.00 per day thereafter per pet for each day Tenant violates the pet restrictions.  Per information available to Landlord[3], on or about December 4, 2017, Tenant acquired an additional French bulldog puppy ("Waffles" as referenced by Ms. Adams) and began maintaining it at the Property.  No prior notice was provided to Landlord, nor consent sought by Tenant.

On December 5, 2017, Landlord discovered the new puppy was being maintained at the Property.  That day, Landlord proved notice that Per Section 9 of the Lease, maintaining the puppy was a violation of Section 9 of the Lease, and payment under the Lease was due for the claimed violation. On information and belief, Tenant maintained the additional puppy on the Property for twenty-seven (27) days.[4] To date, no payment has been provided to Landlord for the claimed violation.

Tenant has claimed the additional puppy is a "companion dog" for Ms. Adams; however, such claim and alleged documentation in support thereof were provided only after Landlord's notice of breach of the Lease was provided, and Ms. Adams first claiming the additional puppy to be a "birthday gift."   Further, although requested, Tenant failed to provide information regarding the alleged prescribing/overseeing doctor's qualifications and approval for the December 7, 2017 emotional support animal ("ESA") letter issued by Crystal Janke, a family nurse practitioner and co-owner of RxBodyFx, Medical Weight Loss and Preventative Care, claiming the additional puppy was prescribed as a "companion dog."[5]  To date, such information has still yet to be provided.[6]

Although notices to Tenant were provided for two (2) days prior about scheduled HVAC service the Property, on December 6, 2017, Tenant denied access to Landlord's scheduled HVAC technician after Ms. Adams has previously agreed to be in the Property, and provide access.  The HVAC company emailed Landlord that Ms. Adams would not let technician in; however, no reason was provided as to why access was not permitted. Landlord had to reschedule the HVAC company for

---

[2] Unless the parties agree otherwise in writing. Tenant may not permit, even temporarily, any pet on the property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

[3] See Brooke Adams' 12/5/17 text message to Landlord, and 12/4/17 Facebook and Instagram posts claiming that a new puppy was a "birthday gift."

[4] December 4, 2017 to December 31, 2017.

[5] On December 12, 2017, Audrey Manito, Tenant's counsel, provided nurse practitioner, Crystal Janke's, claimed ESA letter (for the first time). The claimed ESA letter arguably fails to confirm Ms. Adams' claimed disability meets the ADA definition.  Further, the claimed ESA letter did not provide the date and type of Ms. Janke's license and State in which it was supposedly issued.  Further, research on Ms. Janke's online biography does not outlined her experience and qualification to treat mental health, nor does RxBdyFx's website reference any mental health treatment. Further, the ESA letter is dated December 7, 2017 (three (3) days after the unauthorized puppy began living in the Property).  Finally, it is alleged that on January 13, 2018, in an attempt to provide support for the subsequent claim the additional puppy was prescribed, and in preparation for an eviction trial, Ms. Adams posted on her Facebook that her "doctor recommended a dog."

[6] Landlord's last request, through his counsel, was January 16, 2018.

another week.  The failure to allow access to the Property was a violation of Section 14 of the Lease, for which Tenant is responsible for a $50.00 charge.[7]

Due to Tenant's claimed violations of the Lease, for which Tenant acknowledged[8], and as permissible under Section 27 of the Lease, on December 6, 2017, Landlord engaged attorney Paul Powers to proceed forward with enforcement of the Lease and a Notice to Vacate.  Mr. Powers undertook certain efforts regarding the Notice to Vacate; eventual eviction proceedings; extensive research regarding Tenant's activities and claims; and, discussions with Landlord, Tenant and/or Tenant's counsel regarding the claimed violations under the Lease and Tenant's responses/counterclaims related thereto.  Landlord has incurred certain fees with Mr. Powers (and this Firm) as a result of pursuit of the claimed breach of Lease for which are recoverable against Tenant.[9]

Tenant indicated they were vacating the Property on December 31, 2018 and left the keys in the Property (minus one (1) mail box key previously issued).  Such actions were considered a surrender of the Property.[10]  Despite, surrendering the Property, that did not release Tenant from liability under the Lease, as there was no agreement between the Parties regarding the same.[11]

Landlord also claims Tenant violated the Lease, and underlying deed restrictions for the Property, because on or about December 14, 2017 it was discovered and appeared Ms. Adams had been using the Property for unauthorized and extensive commercial activities, for profit.  In support of such claims, evidence has been obtained showing Ms. Adams engaged Bob Mulrenin, Gordon Lam, Brain Williams and/or Nathan Rodriguez, professional photographers and/or artists, to take commercial photos throughout the Property to sell a variety of items.  Multiple photographs were posted on the professional photographers' and/or artists' social media accounts, along with postings on Ms. Adams' online eBay store page, Facebook, Instagram, and Twitter.  Ms. Adams also modeled, marketed and promoted a clothing brand named "VelvetDoll" (including the sale of Ms. Adams' "previously worn" lingerie), and healthcare products by "IDLife" out of the Property.  Further, Ms. Adams and Kyle Jones (the presidential director at IDLife Corporate, per his own Facebook information), recorded multiple talk shows (also possibly with TLC) and marketed and promoted healthcare products by "IDLife," and other products from Lucky 13, out of the Property.

After receiving notice that Tenant intended on vacating the Property prior to the expiration of the Lease term, Landlord provided written notice to Tenant that Tenant should maintain utilities at the Property (especially due to the severe cold Houston was set to experience) to avoid damage to the Property.  Despite such notice, Tenant cut of utilities to the Property.  Such action was a violation of the Lease.[12]  As a result of the breach, and as necessary to relet the Property, Landlord set up electricity service with Champion Energy on January 4, 2018.

---

[7] Section 14C. of the Lease: Trip Charges:  If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are later denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge of $50.00.

[8] See Ms. Adams' voicemail to Ms. Tao on December 5, 2017 whereby she stated, "*I understand there is a violation.*"

[9] See Sections 29; 27B.(4)(d)-(f); and, Section 10D.(1)(c)-(f) & (n)-(p) of the Lease.

[10] See Section 16B.(2) of the Lease: Surrender of Premises regarding vacating and turning over the keys.

[11] See Sections 28: Early Termination, and 33C.: Joint and Several liability, of the Lease.

[12] Section 11B. of the Lease. "Utilities: Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services."

*Letter to Tenants RE: Security Deposit Accounting and 10 Day Demand related to 726 N. Shepherd Dr., Houston, TX*
*1-23-18     Page 4*

On January 1, 2018, in order to mitigate his damages by Tenant moving out on December 31st including, but not limited to, limit lost rents, Landlord contacted his rental agent, Drew Pursell, to list the Property on market as soon as possible. The rental amount was listed at $2,495.00, which is below the current market. On January 4, 2018, the rental listing went active on market, and showings were scheduled to potential tenants and their agents. The Property has been leased. On or about January 11, 2018, Landlord incurred and since paid a reletting fee of Two Thousand Five Hundred and 00/100 Dollars ($2,500.00) to rental listing agent. On January 19, 2018 the new tenants began renting the Property.

On January 10, 2018, the Parties appeared at court for the forcible detainer trial. While the trial was reset for January 17, 2018, the Parties discussed their claims, and although demand was again made for Tenant to cure the alleged defaults under the Lease, including payment for violations under the Lease, Tenant has failed to do so. On January 17, 2018, the Justice Court dismissed Landlord's lawsuit finding Tenant had vacated the Property on December 31, 2017 and instructed Landlord to pursue any other claimed breaches under the Lease in a separate lawsuit. Unless payment is made as outlined herein; Landlord intends to proceed forward with such suit at the first available opportunity.

Landlord's accounting[13] for the amounts currently due by Tenant under the Lease, and taken as a deduction against the Security Deposit[14] is as follows[15]:

1.  $900.00       Unauthorized pet charge ($250.00 1st day & $25.00 per day thereafter);
2.  $50.00        Landlord trip charge - tenants denied access by HVAC technician;
3.  $1,447.00     Unpaid/lost rent/vacancy 1/1/2018-1/18/2018 ($2,495.00 - Jan. prorated rent $1,048.00).
4.  $2,500.00     Reletting fee by John Daugherty agent Drew Pursell;
5.  $62.00        Landlord's utilities' bill from 1/4/2018 to 1/19/2018 as Tenants cut off on 1/3/2018;
6.  $90.00        Third-party services for eviction delivery fees, and mail postage;
7.  $394.00       Eviction court filing and service fees for two eviction filings;
8.  $8,721.03     Legal fees: Paul Bowers; and,
9.  $2,457.33     Legal fees: The Zak K. Patel Law Firm, PLLC (amount thus far).

---

[13] Per Section 10 of the Lease, Landlord has Thirty (30) days after written notice of surrender before being obligated to account for or refund the Security Deposit. As required by the Lease and directed by Tenant's 12/31/17 email outlining the forwarding address, this initial correspondence must be sent directly to the Tenant as this office is unaware of an agreement that such notice should only be provided to Tenant's counsel.

[14] Section 10D.(1) of the Lease: Deductions: Landlord may deduct reasonable charges from the security deposit for:
(c) unpaid or accelerated rent;
(d) unpaid late charges;
(e) unpaid utilities;
(f) unpaid pet charges;
(g) replacing unreturned keys, garage door openers, security devices, or other components;
(m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;
(n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
(o) mailing costs associated with sending notices to Tenant for any violations of this lease; and
(p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease.

[15] Section 8 of the Lease: "Landlord may apply funds received from Tenant first to any non-rent obligations of tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent."

*Letter to Tenants RE: Security Deposit Accounting and 10 Day Demand related to 726 N. Shepherd Dr., Houston, TX*
*1-23-18    Page 5*

| | |
|---|---|
| Total claimed damages (to date) | $16,621.36 |
| Security Deposit deduction | ($2,745.00) |
| **Amount due from Tenants** | **$13,876.36** |

      Pursuant to Section 10D.(2) of the Lease, notice is provided that after all just offsets and credits, **Thirteen Thousand Eight Hundred Seventy-six and 36/100 Dollars ($13,876.36)** in excess of the Security Deposit is to be provided to this office at 4141 Southwest Freeway, Ste. 250, Houston, Texas 77027, by certified funds, made out to "Fan Chen" **within ten (10) days** after this written demand.

      This is a letter from a debt collector.  Any information will be used for that purpose.

      I am hopeful that this matter can be resolved without the need for costly litigation for both Parties.  Please contact my office with any questions.

Sincerely,

THE ZAK K. PATEL LAW FIRM, PLLC

Xerxes (Zak) K. Patel

cc:  Fan Chen                                    *Via Email*

    Audrey Manito                          *Via Fax: 713-221-6806 &*
    Michael P. Fleming & Associates, P.C.   *Email: amanito@flemingattorneys.com*
    1345 Campbell Road, Suite 100
    Houston, TX 77055

CAUSE NO. 1105291

| | | |
|---|---|---|
| BROOKE NICOLE ADAMS, WESTON | § | IN THE HARRIS COUNTY CIVIL |
| WAYNE PIPER | § | |
|    *Plaintiffs,* | § | |
| | § | |
| v. | § | COURT AT LAW NO. 2 |
| | § | |
| | § | |
| FAN CHEN AND RUIKUN "KAREN" TAO | § | |
| A/K/A RUTKUN "KAREN" TAO | § | |
|    *Defendants.* | § | HARRIS COUNTY, TEXAS |

<u>PLAINTIFFS' FIRST AMENDED PETITION AND REQUEST FOR DISCLOSURE</u>

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiffs BROOKE NICOLE ADAMS and WESTON WAYNE PIPER file this their First

Amended Petition and Request for Disclosure against Defendants FAN CHEN and RUIKUN

"KAREN" TAO A/K/A RUTKUN "KAREN" TAO, and would respectfully show the following:

## I.  DISCOVERY

1.      Pursuant to Rule 190.2 of the Texas Rules of Civil Procedure, discovery is intended

to be conducted under Level 2.

## II.  PARTIES

2.      Plaintiff Brooke Nicole Adams ("Plaintiff Adams" herein) is an individual residing

in Harris County, Houston, Texas.

3.      Plaintiff Weston Wayne Piper ("Plaintiff Piper" herein) is an individual residing in

Harris County, Houston, Texas.

4.      Defendant Fan Chen ("Defendant Chen" herein) is an individual residing in Harris

County, Houston, Texas. He has answered and entered an appearance in this case.

5.      Defendant Ruikun "Karen" Tao a/k/a Rutkun "Karen" Tao ("Defendant Tao" herein) is an individual residing in Harris County, Houston, Texas and may be personally served with process and this petition at 902 Lawrence Street, Houston, TX 77008, or wherever she may be found.

### III.    JURISDICTION AND VENUE

6.      Venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002, as Defendants reside in Harris County, Texas at the time the cause of action accrued.

7.      This Court has jurisdiction over Defendants because they are domiciled in the State of Texas, and have committed wrongful acts in the State of Texas as set forth in this petition.

8.      This Court has jurisdiction over the controversy because Plaintiffs are seeking damages within the jurisdictional limits of this Court.

### IV.   FACTS/CAUSES OF ACTION

9.      On February 25, 2017, Plaintiffs began residing at 726 N. Shepherd Drive, Houston, Texas 77007 (the "Leased Premises") pursuant to a twelve-month lease (the "Lease Agreement").

10.     Defendant Chen was Plaintiffs' landlord and Defendant Tao was the property manager of the Leased Premises.

11.     It is undisputed that the Lease Agreement was a valid and enforceable contract between Plaintiffs and Defendants.

12.     In a Pet Agreement addendum to the Lease Agreement, Plaintiffs listed a dog and paid a pet deposit for the dog.

13.     In early December 2017, Plaintiff Adams brought home an assistance animal - a small French bulldog. The animal was subsequently registered with the United States Support Animal Registry.

2

14.     Shortly after bringing the assistance animal home, Plaintiffs received a notice from Defendants, incorrectly stating that they were in violation of the Lease Agreement by harboring a pet other than the dog listed on the Pet Agreement addendum to the Lease Agreement. In response, Plaintiffs explained to Defendants that the French bulldog was an assistance animal and not to be considered a "pet" under the terms of the Lease Agreement. Although not required under the federal Fair Housing Act, 42 U.S.C. 3601 *et seq.*, Plaintiffs nevertheless offered to pay an additional pet deposit for their registered assistance animal.

15.     Rather than make reasonable accommodations as required by the Fair Housing Act, Defendants posted a Notice to Vacate dated December 7, 2017 ("Notice to Vacate") on the exterior of the main entry door of the Leased Premises.

16.     Despite the fact that Defendants' Notice to Vacate the Leased Premises violated Texas Property Code § 24.005, which requires that a notice to vacate be posted on the interior of the main entry door or in a sealed envelope affixed to the main entry, Plaintiffs cleaned the Leased Premises thoroughly pursuant to the Lease Agreement and vacated the premises on December 31, 2017.

17.     Nevertheless, Defendant Chen pursued an eviction proceeding against Plaintiffs, which was dismissed as moot on January 17, 2018, since Plaintiffs had already vacated the premises.

18.     After vacating, Plaintiffs promptly provided Defendants with a forwarding address for the return of their $2,495.00 deposit security deposit outlined in Section 10(a) of the Lease Agreement.

3

19.      In violation of Texas Property Code § 92.103, Defendants wrongfully withheld Plaintiffs' security deposit, citing "damage," "improper checkout" and "failure to pay an extra pet deposit" as the reasons for withholding. Defendants have wrongfully withheld Plaintiffs' security deposit, in violation of Texas Property Code § 92.101 *et seq.* and in breach of Section 10 of the Lease Agreement, for which Plaintiffs suffered damages.

20.      Although Defendants provided an accounting to Plaintiffs for withholding the security deposit, said accounting is unreasonable and excessive, given Defendants' refusal to make reasonable accommodations under the Fair Housing Act, attempts to evict Plaintiffs near or during the holidays, and pursuit of moot eviction proceedings.

21.      Defendants have retained Plaintiffs' security deposit in bad faith, in violation of Texas Property Code § 92.109 and Lease Agreement. Thus, Defendants are liable for an amount equal to the sum of one hundred ($100), three times the portion of the deposit wrongfully withheld, and Plaintiffs' reasonable attorney's fees.

22.      Plaintiff Adams' French bulldog is a valid assistance animal as defined by the Fair Housing Act. According to the federal Fair Housing Act, an "assistance animal" is not considered a "pet" as to be construed under a typical lease agreement, and a landlord is in violation of the act if he or she refuses to provide reasonable accommodations for a tenant with an assistance animal. In addition, a landlord may not request to see anything provided by the tenant's doctor relevant to the tenant's disability, other than a certificate of registration of the assistance animal. Finally, it is a violation of the Fair Housing Act for a landlord to require a tenant to pay any sum of money for the use of an assistance animal in the Leased Premises.

4

23.     In addition to Defendants' wrongful actions above, Defendants have engaged in a malicious campaign of harassment against Plaintiffs, in spite of Defendants' actual knowledge of Plaintiff Adams' mental health.

24.     Defendant Tao has been particularly vicious, hell-bent on destroying Plaintiff Adams.

25.     Plaintiff Adams is a former professional wrestler with a heavy social media presence. As such, she derives substantial income from promoting products and modeling clothing on different social media platforms. Defendants began contacting Plaintiff Adams' business associates, including photographers, threatening baseless legal action against them, such as because the Leased Premises happened to appear in the background of some of Plaintiff Adams' social media posts. Defendant Tao continued this assault on Plaintiff Adams' career even months after Plaintiffs had vacated the Leased Premises. As a result, Plaintiff Adams was shunned by a number of these business associates, thus causing her to lose valuable income and suffer mental and emotional distress.

26.     In an attempt to further harass Plaintiffs, disrupt their personal lives and cause Plaintiff Adams even more mental and emotional distress, Defendants also went to great lengths to locate and contact Plaintiffs' subsequent landlord, falsely claiming that Plaintiffs had been "evicted" from the Leased Premises and offering "details" upon request. Defendants had no legitimate reason or need to contact Plaintiffs' subsequent landlord; Defendants did so solely to further their malicious campaign of harassment.

27.     In addition to contacting and threatening Plaintiffs' business associates and contacting Plaintiffs' subsequent landlord, Defendants have also contacted Plaintiffs' relatives.

5

28.    Defendants' conduct toward Plaintiffs, especially Plaintiff Adams, are intentional and reckless, as well as extreme and outrageous.

29.    Defendants' conduct has proximately caused severe emotional distress to Plaintiffs which cannot be remedied by any other cause of action.

30.    In short, Defendants will stop at nothing to harass, annoy, torment and humiliate Plaintiffs and disrupt their personal and professional lives.

31.    Additionally, Plaintiffs' injuries resulted from Defendants' malice, which entitles Plaintiffs to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a).

32.    Defendants' harassing conduct toward Plaintiffs are also violations of Tex. Penal Code § 42.07.

## V.    CONDITIONS PRECEDENT

33.    All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## VI.    REQUEST FOR DISCLOSURE

34.    Under Texas Rule of Civil Procedure 194, Plaintiffs request that Defendant Tao disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## VII.    PRAYER

For these reasons, Plaintiffs ask that Defendant Tao be cited to appear and answer and, on final trial, that Plaintiffs be awarded a judgment against Defendants, jointly and severally, for the following:

  a.  Actual damages;

b. Exemplary damages and/or three times the portion of the deposit wrongfully withheld;

c. Reasonable attorney's fees and expenses;

d. Court costs;

e. Prejudgment and post-judgment interest; and

f. All other relief to which Plaintiffs are entitled.

Respectfully submitted,

MICHAEL P. FLEMING & ASSOCIATES, P.C.

By: */s/ Audrey Manito*
Michael P. Fleming
State Bar No. 07130600
mfleming@flemingattorneys.com
Audrey Manito
State Bar No. 24078815
amanito@flemingattorneys.com
1345 Campbell Road, Ste. 100
Houston, Texas 77055
Tel. 713-221-6800
Fax 712-221-6806

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served in accordance with the Texas Rules of Civil Procedure on all counsel of record on September 26, 2018.

*Via Fax: 281-941-2563*
*& Email: zak@zakpatellaw.com*
Zak K. Patel
THE ZAK K. PATEL LAW FIRM, PLLC
4141 Southwest Freeway, Ste. 250
Houston, TX 77027