| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

Brooke Adams, *et al.*, §
§
      Plaintiffs, §
§
*versus* §    Civil Action H-18-3948
§
Fan Chen, *et al.*, §
§
      Defendants. §

## Findings of Fact

1. Brooke Adams and Weston Piper leased a townhouse at 726 North Shepherd Drive, Houston, Texas 77007, on February 15, 2017, for one year. The landlord was Fan Chen; Ruikun Tao was the property manager. Chen and Tao are married.

2. The lease allowed Adams and Piper to have a dog. They did. For it, they paid a $250 pet deposit. On December 4, 2017, Adams and Piper brought a second dog into the house for Adams's emotional support.

3. Adams had been diagnosed with mental health complications before she got the emotional support animal. On December 6, 2017, Adams gave Chen a copy of the second dog's emotional-support certificate. Although she was not obliged to supply a deposit for a service animal, Adams offered to pay a second pet deposit for this new dog. Through Tao, Chen rejected this offer.

4. On December 7, 2017, Chen posted a notice to vacate on the door of the townhouse. On December 20, 2017, he posted a second notice to vacate.

5. On December 22, 2017, an eviction lawsuit was filed by Chen against Adams and Piper. It was sent to mediation.

6. On December 31, 2017, Adams and Piper moved from the townhouse.

7. Chen filed a second eviction lawsuit on January 17, 2018 – 18 days after the tenants vacated. It was dismissed as moot.

8. Chen and Tao set about a cluster of mean, irrational attacks on their former tenants. Chen's law firm – Nguyen & Chen, L.L.P. – was the vehicle for some. Under oath, Chen said that a lawyer at his firm billed Chen $975.00 in fees and costs for the first eviction suit that had one hearing and an order to mediate. While that suit was pending, Chen billed himself $8,997.28 in legal fees for the second suit that was dismissed – on the same day that it was filed – as wholly duplicative of the initial suit.

9. Chen paid a broker $2,500 to find a tenant. The broker found one immediately and the new tenant moved into the townhouse on January 19, 2018, at the same rate.

10. Chen and Tao did not reasonably accommodate Adams's mental health needs. To the contrary of anything suggesting accommodation, buttressed by some personal delusion, Tao launched a despicable campaign tormenting Adams and Piper as well as those who were associated with Adams. Chen cravenly supported her through the trial.

11. Despite having found new tenants, Chen and Tao continued their malevolent character assassination against Adams and Piper by (a) accusing, and threatening to sue, people who had photographed Adams in the townhouse of copyright violations; (b) filing grievances against the nurse who wrote the first health note for the second dog; (c) telling people whose products she had been hired to sponsor that she had cheated on her taxes, abused her children, and was a drunk; and (d) told her new landlord that she was all of these things.

12. For the copyright letter, Tao took a letter from their outside counsel and doctored it to be her copyright claim. She used his letterhead and his signature, but the text was pure Tao.

13. On April 26, 2019, Chen and Tao filed a fraudulent report with the Texas Department of Family and Protective Services accusing Adams and Piper of sexually abusing their children. The grounds were that she had posted a picture of her bathing her infant, and that they were using drugs and alcohol around the children. Her knowledge of drunkenness was that, in one picture Adams had posted, she is shown holding a glass of wine. The report also included frivolous allegations of prostitution, drug trafficking, and tax evasion. The TDFPS case worker's investigation found no evidence to support any of Tao's allegations, recommended the case be closed on April 30, 2018, and the TDFPS closed the case on May 3, 2018.

14. Chen and Tao filed a complaint against Adams's nurse practitioner, Crystal Janke, with the Texas Medical Board.

15. The evidence, including Tao's trial testimony, shows that Tao has had three different stories of how she learned of the second dog.

16. Chen and Tao attacked Adams and Piper on imaginary, lurid claims. These were provoked by something other than the second dog. None of these reprehensible intrusions and slanders would have been taken by a reasonable, similarly situated landlord – not even by an exceptionally grouchy neighbor.

17. When Chen was on the stand, he would look at Tao for signals of the answer. Tao was shaking her head or nodding. When the court told them to stop, he denied that he had been responding to signals from Tao. The signals continued.

18. Adams did not violate the lease by using the townhouse for "business of any type" by using the internet to sell her wrestling outfits or other clothes. Chen's position on this clause would forbid a tenant from (a) checking her office e-mail

from a computer at home, (b) having business associates to dinner, (c) using the internet to buy business-related equipment, or (d) lying in bed worrying about last month's sales figures.

19. There was no morals clause in the lease. If it had one, nothing Adams had done at home or in her life would have been covered by a strict good-behavior clause.

## Conclusions of Law

1. Adams and Piper did not breach the lease.

2. Chen and Tao breached the lease. They operated as one and ratified each others acts.

3. The second dog is an emotional support animal under the Fair Housing Act. Chen and Tao violated the Fair Housing Act by actively refusing reasonable accommodations for Adams's disabilities.

4. Chen and Tao retaliated against Adams and Piper for something other than their occupancy of the townhouse. The reaction to the new dog and Adams's insistence that the dog and she were properly covered by the housing law incited Tao to refuse accommodation and even the second deposit that Adams offered. Tao was not going to tolerate Adams's being firm in her assertion of her rights and her current offer to pay the deposit to keep the peace.

5. Adams and Piper are not liable for fees, costs, damages, or losses that Chen and Tao incurred and pretended to incur after they moved out of the townhouse.

6. Chen and Tao will not recover their attorney's fees or court costs.

7. Adams and Piper will recover their attorney's fees, court costs, and prejudgment interest from Chen and Tao under paragraph 29 of the lease.

8. Through their counsel, Chen and Tao must return the security deposit of $2,495 to Adams's and Piper's counsel within 14 days of the entry of the judgment.

9. Chen and Tao must retract their statements to the three photographers, the new landlord, Velvet Dolls, TDFPS, and the Texas Medical Board. Because "[a] person...who acts in bad faith or with malicious purpose in reporting alleged child abuse or neglect is not immune from civil or criminal liability,"[1] Chen and Tao must immediately resolve any repercussion from the TDFPS or the State of Texas that derive from their malicious and false report of child abuse. A copy of the statements are attached to these findings. Chen and Tao must each sign and date each statement, and they must have each notarized.

Signed on June 14, 2019, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge

---

[1] Tex. Fam. Code Ann. § 261.106 (West).